THE PEOPLE *ex rel.* ABRAHAM P. LEFEVER, Appellants, *v.* THE
    BOARD OF SUPERVISORS OF ULSTER COUNTY, Respondents.

Under the statute (Laws, 1847, ch. 455), giving a remedy for the undervaluation
    of land by the highway commissioners, it is not essential that the justice
    who issued the summons for the jury should certify their verdict.
The statute, in that respect, is merely directory, and the verdict may be certified
    by another justice, &c.
Remarks upon the nature of directory statutes, by LEONARD, J.

*John H. Reynolds,* for the appellants.

*M. Schoonmaker,* for the respondents.

LEONARD, J.   The answer to the alternative mandamus,
as a pleading, is informally and inartificially drawn.   The
issues joined upon the matters alleged in the writ, are mixed
up with the allegation of new matter throughout.   The alle-
gation of new matter, constituting a defense, should be
separately stated.   Much of the new matter in this answer
consists of allegations impeaching the record of the assess-
ment of the relator's damage for irregularities in drawing
and challenging the jurors.   These are collateral issues, not
triable in this action, but reviewable, if at all, on a direct
issue between the parties to the record, the relator and the
commissioners of highways.   Another issue sought to be
raised by the answer is that Philip Hasbrouck was the person
who officiated as a justice of the peace in summoning the
jury, &c., but that he was not a justice in fact.   None of
these facts are separately pleaded so that the relator can
properly take issue or demur.   The last mentioned allegation
is probably demurrable, as amounting only to the general
issue, because on a denial of the statement in the alternative
writ, that the list of jurors, drawn by the clerk, &c., was
delivered to a justice of the peace of the town of New Paltz,
or that such justice issued a summons, swore the jurors and
witnesses, and certified the verdict, the relator would have
been required to prove the very facts so alleged as new
matter.   The particular part of the answer, which the relator

has regarded as a separate defense, and to which he has served the pleading giving rise to the demurrer, is framed in the following manner, viz. :

"And these defendants further answering, state and return, that they deny that the verdict of the jurors was certified to by said Philip S. Hasbrouck, who claimed to act as justice of the peace as aforesaid."

This purports to be a denial of a statement in a former pleading of the other party. But there is no allegation in the alternative writ that Hasbrouck certified the verdict, nor that he was the justice, nor is he mentioned, even. The paragraph does not purport to be an allegation. It is an impertinent and frivolous paragraph, without meaning, according to the principles of pleading. It is not a denial of anything alleged by the opposite pleader, nor is it an allegation of new matter which the other party can be called on to admit or deny. It might be shown, by argument, that the pleader intended to deny that the justice who is stated in the writ to have acted in the proceeding by issuing the summons for the jurors, &c., was the justice who certified the verdict.

It is not the duty of a court to resort to an inference or an argument as to the meaning of a bad pleading in order to sustain it on demurrer. Parties are required to make clear and distinct statements in their pleadings. Every intendment, on a demurrer, is against the pleader. Courts are not to labor to make a better statement for the pleader, on a technical issue of this kind, than he has made for himself.

Had the paragraph quoted from the answer remained without any reply on the part of the relator, it could not have injured him at the trial, because it denies nothing alleged in the former pleading, and asserts nothing affirmatively. It called for no reply for that reason, and it was a mistake on the part of the relator to plead to it. The issue purporting to be raised by the reply and the demurrer, has no legitimate relation to the previous pleading. The issue so joined should have been stricken out by the Supreme

Court as frivolous or immaterial. (*Heaton* v. *Bartlett*, 13 Wend., 672.)

The issue calls for no judgment or decision. The General Term has, however, rendered a judgment against the relator on this issue, that he take nothing by his bill, and that the respondents recover costs. It is wholly immaterial, and must for that reason be reversed.

The case on the merits is also clearly with the relator, and I will proceed to examine the question raised, upon the assumption that it is before us on legitimate and material allegations in the pleadings.

The reply admits that the verdict was not certified by the justice who issued the summons, and states, in avoidance, as new matter, that the commissioners of highways procured the justice to refuse to certify the verdict for the purpose of interrupting the proceedings and preventing the reassessment of damages; and that the justice, against the will of the relator, absented himself, and could not be found or induced to certify the verdict. That another justice of the same town, who attended the proceedings, certified the verdict.

To this pleading the respondent has demurred.

The question so presented is, whether the verdict can be certified by any justice other than the one who issued the summons; or, in other words, whether the certificate of the justice who issued the summons can be dispensed with.

The statute provides that twelve jurors shall be drawn by the clerk of an adjoining town, who shall make a certificate of their names and the purpose for which they were drawn, and deliver it to the party first asking for the reassessment. The party shall, within twenty-four hours, deliver the certificate to a justice of the peace of the town wherein the damages are to be assessed; it is made the duty of *such justice* forthwith to issue a summons to a constable of the town, directing him to summon the persons named as jurors, specifying the time and place where they are to meet. When they appear, the *justice who issued the summons* shall draw by lot six of the persons attending as a jury, and the first

six persons drawn, who shall be free from exceptions, shall be the jury to reassess the damages; the said jury shall be sworn by *the said justice*, well and truly to determine and reassess the damages, and shall take a view of the premises, hear the parties and such witnesses as may be offered and sworn by *the said justice* before them, and shall render their verdict in writing under their hands, which shall be certified *by said justice*, and be delivered to the commissioners of highways of the town, and the same shall be final. (2 R. S., 5th ed., 397, 398, §§ 85 to 93; Sess. L., 1847, ch. 455.)

There is no ambiguity in the direction of the statute. It is the same justice who issued the summons who is required to certify the verdict.

The demurrer admits the truth of the new matter pleaded; and it is apparent that the misconduct of the justice in a minor particular, now admitted by the demurrer, is put forward as the means of defeating the primary or principal object of the legislature in enacting the statute. The object of the statute is to afford a remedy to the owner, through whose land the commissioners of highways seek to open a new road, against an undervaluation of his land by the commissioners appointed by the county court. Id., 397, § 83, or *vice versa*.

The party applying for the jury and obtaining a certificate of the names of the jurors drawn for that purpose may select the justice of the proper town, who shall issue the summons to bring the jurors together, but, according to the letter of the statute, the same justice must continue to act, and perform all the subsequent duties required of a justice in the proceedings.

These duties appear to be of a ministerial character. The statute confers no control of the proceedings upon the justice. There is nothing indicating that he is to preside, or to direct the admission or exclusion of evidence, as on a trial before him. His duties are limited to issuing the summons, drawing the names of six, who are to act as the jury to assess the damage, swearing the jurors and witnesses, and finally to certifying the verdict. There his duties end.

The statute prescribes no penalty, and imposes no forfeiture in case of a non-compliance with these provisions. There is no declaration that the verdict shall be void in case of the failure to comply with any of the directions of the statute as to the form of the proceeding.

These are some of the *indicia* by which the courts have established wise rules for determining the intention of the legislature in the enactment of laws. Statutes are held to be directory or declaratory, according to the existence or the want of certain indications of legislative intent.

These rules have been long in practice, and legislative bodies must be presumed to have enacted statutes with reference to them, as it is in their power to use language so that the statute must be considered mandatory, thereby excluding the power of the court to construe them as declaratory. These rules do not subvert, but carry into effect the intention of the lawgiver as it is to be gathered from the phraseology of the statute. A strict and literal adherence to the letter and form of a statute in minor or non-essential particulars, will often defeat a remedy, or destroy a right which it was the principal intention of the legislature to create or provide.

Where the statute directs an act to be done in a certain way, or at a certain time, and a strict compliance as to time or form does not appear to the judicial mind to be essential, the proceedings are held valid, though the command of the statute has been disregarded. The statute is then said to be directory. (Sedgwick on Stat. and Const. Law, 368.) Numerous authorities are cited by this author on several succeeding pages, and in the notes, showing the application of the rule.

The same rule has been many times applied in this court.

In the case of *Sears* v. *Burnham* (17 N. Y., 448), it was held that the statute, prescribing the form and manner of docketing a judgment so as to create a lien on real estate, and a priority as to subsequent judgments, was directory, and that an error of one year made by the clerk of the court in docketing a judgment from a transcript made by another clerk of the court, related to the form only, and did not pre-

vent such judgment from enjoying the same priority as if no such error had occurred. The court said, in that case, that "a substantial observance of those requirements, having reference to the object the legislature had in view, of affording information to all who might be affected by the judgment, is all that was designed or is necessary. Those provisions are merely directory, and omissions and variances which cannot work any prejudice are immaterial. * * * * * The mistakes of the clerk are to be overlooked when no prejudice results."

The following cases are illustrations of the proper application of the rule: (*The People* v. *Cook*, 4 Seld., 68; *Marchant* v. *Langworthy*, 6 Hill, 646; *Striker* v. *Kelly*, 7 id., 24; *Jackson* v. *Young*, 5 Cowen, 269; *The People* v. *Peck*, 11 Wend., 611.)

"The reason and intention of the lawgiver will control the strict letter of the law, when the letter would lead to palpable injustice, contradictions and absurdity." (4 Kent Com., 462, margin.) Lord MANSFIELD says: "There is a known distinction between circumstances which are of the essence of a thing required to be done by an act of parliament, and clauses which are merely directory." (*Rex* v. *Loxdale*, 1 Burr., 447.)

The statute, West. 1, ch. 3, giving a redisseizin to be tried *per primos juratores*, has been so construed that when there was no first jury, it shall be tried by others, regarding it as out of the meaning though within the words. "For the statute," says Lord COKE, "albeit it be penal, shall not be so literally expounded that if it cannot be tried *per primos juratores* it shall not be tried at all. The case of there being no jurors at all in the former assize, it is plain, was never contemplated, and the provision was never meant to apply to such a case." 2 Coke's Inst., 84; cited Dwarris, 624.

The verification of the verdict was not incapable of being certified in other ways as well as by the justice who issued the summons. It is a formal matter, because it proves nothing that cannot be proved in other ways as satisfactorily. Its omission can work no prejudice to the certainty of the

proceeding. The affidavit of some of the jurors, or the certificate of another justice, accomplishes the same purpose practically.

The proper and just reassessment, and the verdict, are the essential matters, and cannot be dispensed with, but the certificate is a matter of form which can be supplied by other evidence without prejudice to any one. The misconduct or mistake of a public officer, in a matter of mere form, should not prevent the attainment of right and justice.

The legislature, in adopting the statute in its present form, did not contemplate the case of a refusal by a justice of the peace of the performance of a duty enjoined by statute. If the legislature were interrogated, according to the suggestion of ancient Plowden, I think they would answer that it was not their intention that the reassessment should be defeated by the want of form in the certification of the verdict. It is alleged that the justice attended the proceeding. We may assume that he was acquainted with the jurors, and knew the identity of the persons who were summoned and acted.

The supervisors ought to be satisfied, in case of the refusal of the justice to certify, by other competent proof of the genuineness of the verdict, and not place their refusal to audit the damages upon a matter of mere form. My respect for the eminent jurists who passed upon this case in the court below, has impelled me to a more careful and lengthy investigation than it would have otherwise called for, and it is not without some hesitation that I venture to declare that my mind has come to a different conclusion from that to which they arrived.

In my opinion the judgment should be reversed on this ground as well as the former.

All the judges concurred, except MORGAN and HUNT, JJ., who were for affirmance.

Judgment reversed.